UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | No. 13 CR 888-1 |
| v. | ) | |
| | ) | Judge Amy J. St. Eve |
| CONSTANTINO PERALES | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, Circuit Judge*:

Before the Court is Defendant Constantino Perales's Motion to Withdraw Plea of Guilty. (R. 170.) For the following reasons, the Court denies Defendant's Motion.

## BACKGROUND

Defendant Constantino Perales was indicted on November 6, 2013, in a seventeen count indictment. On July 30, 2015, a federal grand jury returned a thirty-two count superseding indictment against Defendant and co-defendant Andrew Strandell. The indictment charged Defendant Perales with one count of conspiracy to possess with intent to distribute Oxycodone, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 846, and thirty-one counts of knowingly and intentionally dispensing a controlled substance outside the course of professional practice and without a legitimate medical purpose in violation of 21 U.S.C. § 841(a)(1). Defendant Strandell subsequently pled guilty and agreed to cooperate with the government.

**I.  Changes in Counsel**

Attorney Calvin Clay Campbell initially represented Defendant Perales and subsequently withdrew. Defendant subsequently retained attorney Raul Villalobos who filed an appearance on

---

* Sitting by designation (R. 207).

December 11, 2013.[1] On March 16, 2017, the Court set a December 4, 2017 trial date. On August 9, 2017, Mr. Villalobos filed a motion to withdraw. The Court granted the motion and appointed new counsel, Mark Kusatzky, for Defendant. Before appointing Mr. Kusatzky, an experienced trial attorney, the Court confirmed that counsel could be ready for the previously scheduled trial December 4, 2017. On October 4, 2017, the Court held a status after Defendant directly contacted the Court to complain about Mr. Kusatzky. At the status, Defendant told the Court:

> I don't think, from what we've seen and what we've discussed, that Mr. Kusatzky is going to grasp and understand how this case is going to come – going to evolve in the court.

(R. 175 at 9.) In response to the Court's inquiry, Mr. Kusatzky stated that he did not believe the conflict was irreconcilable and asked to meet with his client and come back a week later. The Court noted its concern that Defendant was attempting to avoid the long-standing trial date in this 2013 case. At the status a week later, Defendant told the Court:

> I want to thank you very much for the opportunity. We met twice and I got to know Mr. Kusatzky, and I tend to agree with your comment the last time we were here.

(R. 176 at 3.) Defendant then confirmed that he and Mr. Kazatsky had worked out the issues and they did not have a conflict.

Counsel asked for the appointment of a second attorney to assist in trial preparation. Given the complexity of the issues, the Court granted counsel's motion for appointment of

---

[1] Judge James B. Zagel presided over the case until the Executive Committee reassigned it to this Court on December 14, 2016. (R. 87.)

additional counsel, and appointed attorney James Graham,[2] another highly experienced criminal defense attorney.

## II.  The Guilty Plea

The case was scheduled to proceed to trial on December 4, 2017.  On the morning of jury selection, as the venire panel was lined up outside the courtroom, Defendant informed the Court that he wanted to plead guilty pursuant to a written plea agreement that he previously had negotiated with the government and reviewed extensively with his lawyers.  He specifically told the Court the he intended to plead guilty to Count One of the superseding indictment and agree to a series of stipulated offenses.

The Court gave the parties time to finalize the plea agreement that morning.  Later that morning, Defendant appeared before the Court and, under oath, pursuant to a written plea agreement, entered a plea of guilty to conspiracy to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, a quantity of mixtures and substances containing Oxycodone.  (R. 156.)  As part of his plea, Defendant stipulated to prescribing controlled substances (Suboxone, Oxycodone, and Alprazolam) to patients knowing that the controlled substances were not medically necessary, and having the patients engage in sex and perform sexual acts on Defendant in exchange for the continued issuance of these prescriptions.  Following an extensive and proper plea colloquy, the Court accepted Defendant's guilty plea as discussed in detail below.

On December 8, 2017, Defendant filed a pro se motion requesting that his court appointed counsel withdraw.  On December 12, 2017, the Court granted the request for the

---

[2] As noted below, Defendant subsequently asked for Messrs. Kustazky and Graham to withdraw and the Court appointed Michael Schmiege to represent him.  On July 26, 2018, Defendant filed a motion asking for Mr. Schmiege, his fifth lawyer, to withdraw.  (R. 220.)

3

withdrawal of legal counsel and appointed new counsel, Michael Schmiege, for Defendant Perales.

### III. Defendant's Motion to Withdraw His Guilty Plea

On February 19, 2018, Defendant filed this motion to withdraw his plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). Defendant attached an affidavit to his motion claiming, among other things, that his prior lawyers had not done what he had asked, his court-appointed expert had not obtained knowledge of the facts of the case, his lawyers told him that could not win at trial, his lawyers pressured him into pleading guilty, his lawyers "unduly pressur[ed] him to take a plea" while the jury was lined up for jury selection on the morning of trial, he had a "full-blown panic attack" the morning he pled guilty, his "attorneys used psychological and deliberate mental pressure in a crescendo effect that caused [him] to say plea at the very last second with a malfunctioning mind," and he is not guilty of the charges. In addition, Defendant represented that he met with a "psychologist, Dr. Leo Meagher" to discuss his "panic disorder." (R. 170-1.)

### IV. Supplement to Motion

On March 12 ,2018, "at the request and insistence of the defendant," Defendant's counsel filed a "supplement" to the motion to withdraw Defendant's plea. The supplement included a March 9, 2018 letter from Leo J. Meagher, Defendant's "counselor." The letter—dated over three months after Defendant entered a guilty plea in this case—explains that Defendant contacted Mr. Meagher on March 5, 2018, because Defendant "felt he might have been having a dissociative experience when he pled guilty on his case." (R. 190-1.) Mr. Meagher further explains that he had Defendant complete a "Dissociative Experiences Scale." Mr. Meagher concludes:

> After reviewing his answers to the questions I don't feel that he has a Dissociative Disorder but was having a dissociative reaction due to the level of panic that he was experiencing. The reaction appears to have stopped once he left the courtroom but he was likely still in a panic state which likely had an effect on his judgment and decision making.

(*Id.*)

On July 20, 2017, Defendant's counsel filed a supplemental report and informed the Court that he could not "in good faith reply upon the findings/statements of Meagher" and asked the Court to strike them. Counsel made this request based "upon numerous reasons, including but not limited to the following: Gaskell's Report, the conversation with Dr. Sheth, the background of Leo Meagher, the inconsistencies in Meagher's letters and the improper administration of the Dissociative Experience Scale." (R. 217.)

## V.     Examination and Report by Dr. Steven Gaskell, Psy. D.

In March 2018, defense counsel asked the Court for additional time to have Defendant examined by a court-appointed psychologist in support of Defendant's motion to withdraw his guilty plea. The Court granted Defendant more time to do so and granted his request to appoint a forensic psychiatrist to conduct an independent examination of him.

On July 20, 2018, Defendant filed the report of Steven Gaskell,[3] an expert forensic psychologist who specializes in psychological evaluations for courts. Gaskell has completed over 2,000 psychological evaluations for state and federal courts. Gaskell examined Defendant on June 14, 2018. In addition to examining Defendant and conducting relevant testing, Gaskell

---

[3] On July 23, 2018, Defendant filed a *pro se* submission, despite being represented by counsel, seeking to undermine Dr. Gaskell's opinion. (R. 218.) Although Defendant claims that it is "bias and unethical," he failed to provide any support for his assertions. He also contends that "the Prosecution is relying on a fraudulent forensic expert." Yet, Defendant is the one who sought court funds and requested the appointment of this independent expert to give an opinion in support of his motion to withdraw his guilty plea. The fact that Defendant does not like Dr. Gaskell's professional opinion does not change the voluntariness of Defendant's plea. Nothing in Defendant's unsubstantiated assertions undermines the credibility and weight of Dr. Gaskell's opinion. The Court denies this motion.

5

reviewed numerous transcripts from proceedings before the Court, including the transcript from Defendant's December 4, 2017 change of plea, and reviewed the motions papers filed in connection with Defendant's motion to withdraw his plea. Gaskell gave the following opinion:

> Upon reviewing relevant discovery and completing a comprehensive interview and psychological testing, it is this examiner's opinion that Mr. Perales knowingly, intelligently, and voluntarily entered his plea of guilty on December 4, 2017.

(R. 217-1 at 18.) Dr. Gaskell found that Defendant's affect "did not match the level of distress he claimed," and his "self-reported symptoms were much more severe than his presentation in the interview and testing."

## VI. Defendant's Contact with Dr. Sheth

In his Supplement to the Motion to Vacate the Guilty plea, counsel also added the following:

> After receiving the report from Gaskell, Perales contacted Dr. Sheth, who was his psychiatrist from 2013 to 2017. Perales wished for Dr. Sheth to write a report providing opinions concerning his mental health. Undersigned counsel spoke with Dr. Sheth who indicated that he was unable to provide the requested report and explained the various reasons why. Statements made by Dr. Sheth gave undersigned counsel great concern about the accuracy of information contained in the [motion to withdraw].

(R. 271 at 3.) Counsel thereafter moved to strike any references to Dr. Sheth and his findings that are set forth in the motion to withdraw.

## LEGAL STANDARD

After a court has accepted a guilty plea, a defendant's right to withdraw the plea prior to sentencing is not absolute. *United States v. Jansen*, 884 F.3d 649, 655 (7th Cir. 2018); *United States v. Bowlin*, 534 F.3d 654, 659 (7th Cir. 2008). Pursuant to Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure, a defendant may withdraw a guilty plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *United States v. Mays*,

6

593 F.3d 603, 607 (7th Cir. 2010). When a proper Rule 11 colloquy has taken place, however, the Rule 11(d)(2)(B) escape hatch is narrow. *Id*. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Jansen*, 884 F.3d at 655 (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)).

A defendant who states at a plea colloquy that his plea was "freely and knowingly given . . . faces an uphill battle" in convincing a judge that his reasons for withdrawal are "fair and just" because representations made at a plea colloquy are under oath and are given a "presumption of verity." *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009). This presumption applies because "the purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010); *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004). Therefore, the record that is created at a Rule 11 colloquy is presumed to be true. *Bowlin*, 534 F.3d at 660 (citing *United States v. Logan*, 244 F.3d 553, 558 (7th Cir. 2001)). Because a defendant's statements at the plea colloquy are given a presumption of verity, the defendant bears a heavy burden of persuasion in showing that a fair and just reason exists for requesting the withdrawal. *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008) (citing *Logan*, 244 F.3d at 558). As such, "a defendant has no legal entitlement to benefit by contradicting himself under oath." *United States v. Vazquez-Ortero*, No. 03-cr-0611-1, 2007 WL 1225383, at *4 (N.D. Ill. Apr. 19, 2007).

Moreover, Federal Rule of Criminal Procedure 11(h) states that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h). The United States Supreme Court has explained that the purpose of subdivision (h) is

to avoid the automatic vacatur of every Rule 11 violation. *United States v. Davila*, 569 U.S. 597, 605-07 (2013) (explaining that although substantial compliance with Rule 11 is required, the purpose of Rule 11(h) is to guard against exalting "ceremony . . . over substance.") (citing Advisory Committee's 1983 Note on Subd. (h) of Fed. Rule Crim. Proc. 11). Thus, a court must look at the totality of the circumstances in determining whether a defendant has entered a valid guilty plea. *Davila*, 569 U.S. at 605-07.

## ANALYSIS

Defendant Perales argues that his plea was not entered knowingly and voluntarily because Defendant's lawyers pressured him to enter a guilty plea and his plea occurred in haste while Defendant was suffering a panic attack. Defendant further claims he is innocent of the charges. For the reasons explained below, because Defendant knowingly and voluntarily entered his guilty plea and has failed to show a fair and just reason to allow him to withdraw his plea, the Court denies the motion.

**I.     Defendant's Guilty Plea Was Knowing and Voluntary**

Defendant was 66 years old at the time of his guilty plea in December 2017. He had a medical degree and post-medical training. He obtained his undergraduate degree in 1972 and his medical degree in 1978. Defendant also has held numerous professional certifications, including from the American Society of Addiction Medicine, the Illinois State Medical Society, and the American College of Occupational and Environmental Medicine. In short, Defendant is educated and intelligent. *See United States v. Loutos*, 383 F.3d 615, 619-20 (7th Cir. 2004).

The Court had scheduled the December 4, 2017 trial almost nine months in advance of the date. As of the trial date, the case was over four years old. In addition, the Court repeatedly advised Defendant at each of the numerous status hearings that the trial was going forward on

that date, despite his apparent attempts to unduly delay it. On the morning of trial with the jury lined up outside the courtroom ready for jury selection, Defendant told his lawyers that he wanted to plead guilty. The following exchange took place:

> MR. GRAHAM: Judge, our client has indicated that he would like to take a plea in the case. And my question was, is that there was a written plea agreement that hadn't gone through chain; but, I'm not sure what the government's position on a plea at this time would be.
>
> MS. SAWYER: Your Honor, it was in the process of being reviewed by our supervisors, but as of Monday last week, when defendant first rejected it.
>
> \* \* \* \*
>
> THE COURT: Mr. Perales, is it your intention to plead guilty?
>
> DEFENDANT: Yes.
>
> \* \* \* \*
>
> THE COURT: And is it your intention, then, to plead guilty to Count 1 and agree to the stipulated offenses that were previously provided to you?
>
> DEFENDANT: Yes.
>
> MR. GRAHAM: Judge, I had gone through with Mr. Perales, a week ago Sunday night, the plea agreement; and, we then discussed it many times on Monday morning a week ago.
>
> THE COURT: Here is my – I will give you a little bit of time. I have 38 jurors standing out there waiting.
>
> DEFENDANT: I apologize, your Honor.
>
> THE COURT: I am happy to take his plea if that is what he wants to do; and obviously, that is up to him . . . .

(R. 181 at 5-6.) The Court then gave the lawyers over an hour to obtain final approval from the supervising chain at the government. After approval was obtained, the Court took and accepted Defendant's plea of guilty, following a detailed colloquy as explained below.

Looking at the totality of these circumstances, the Court concludes that Defendant knowingly and voluntarily entered his guilty plea. *United States v. Novak*, 841 F.3d 721, 727 (7th Cir. 2016). The charges were not overly complex, Defendant is intelligent, he had two experienced, skilled attorneys representing him at the change of plea hearing, the Court thoroughly questioned Defendant and advised him of his rights during the plea hearing, and (as discussed further below) Defendant's own expert concluded that his plea was knowing and voluntary. There is no evidence that Defendant's attorneys pressured him into pleading guilty. To the contrary, Defendant's own statements support that no one pressured him. Defendant's attempts to manufacture a panic attack fail given the evidence in this case, his conduct during the plea colloquy, and the opinion of Dr. Gaskell.

## II.     Defendant Was Not Pressured into Pleading Guilty

Defendant argues that he felt pressured to plead guilty due to the threat of the impending trial. In the context of Rule 11(d)(2)(B), "[o]ne 'just and fair reason' for withdrawing a defendant's plea of guilty is that the plea was not voluntarily made." *Bowlin*, 534 F.3d at 660. A guilty plea, however, is voluntary "when it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea." *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995) (citing *United States v. Jordan*, 870 F.2d 1310, 1316 (7th Cir. 1989)). Defendant's assertion that he felt pressured into entering pleading guilty is directly contradicted by his own representations made in both the written plea agreement and under oath at the December 4, 2017 hearing. Specifically, the Plea Agreement, which Defendant signed, states:

> Defendant and his counsel acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in the Agreement, to cause defendant to plead guilty.

10

> Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of the Agreement.

(R. 156 at ¶¶ 27-28.) Defendant confirmed in open court that he had read his plea agreement, reviewed it with his attorneys, and understood each of the terms of his plea agreement. (R. 181 at 22-23.) Additionally, although Defendant informed the Court of his intention to plead guilty the morning of jury selection, he and his lawyers had received the plea agreement a week beforehand and had reviewed the plea agreement during that time. (*Id.* at 23.)

Furthermore, at the December 4, 2017 plea hearing, the Court conducted an extensive plea colloquy. During the plea, Defendant Perales, under oath, answered as follows:

> THE COURT: Mr. Perales, has anyone forced you in any way to plead guilty?
>
> DEFENDANT: No.
>
> THE COURT: Has anyone threatened you in any way to cause you to plead guilty?
>
> DEFENDANT: No, ma'am.
>
> THE COURT: Apart from the plea agreement we've been discussing, have any promises been made to you to cause you to plead guilty?
>
> DEFENDANT: No.
>
> COURT: Is your decision to plead guilty entirely voluntary on your part after discussing the case with your attorney?
>
> DEFENDANT: Yes, it is.
>
> THE COURT: Have any promises been made to you regarding sentencing other than what we have discussed this morning?
>
> DEFENDANT: No, ma'am.

In addition, the Court specifically advised Defendant that the decision to plead guilty was solely his decision, regardless of any advice from his attorneys:

> THE COURT: And do you understand, Mr. Perales, that ultimately it is your decision, and your decision alone, whether you wish to plead guilty, regardless of any advice anyone has given you?
>
> DEFENDANT: That's correct.

(*Id.* at 27.)

Statements given under oath during a plea colloquy are "presumed to be true," thus a defendant "bears a heavy burden of persuasion in showing that a 'fair and just reason' for withdrawing the guilty plea exists." *United States v. Redmond*, 667 F.3d 863, 870 (7th Cir. 2012). Both the plea agreement and the plea colloquy made clear that Defendant's decision to plead guilty was fully voluntary and that he was not "pressured" into doing so. In short, Defendant's admissions under oath undermine his claim that he was pressured into entering a guilty plea. A defendant's "protestation that statements freely made under oath when entering the plea were a pack of lies is not a 'fair and just reason' to start anew." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). The Court thoroughly followed the procedures outlined in Rule 11 to ensure that Defendant's plea was knowing and voluntary. *Accord United States v. Lowe*, 512 F. App'x 628, 630 (7th Cir. 2018) (deeming challenge to a plea's voluntariness frivolous under plain-error review because district court advised defendant of his trial rights, the nature of charged offense, and the applicable statutory range of penalties). A motion to withdraw a plea of guilty "that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005); *see also United States v. Haslam*, 833 F.3d 840, 846–47 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 840 (2017) (defendant's "argument necessarily entails an assertion that he lied to the magistrate judge. The

district judge was entitled to reject this assertion out of hand unless [defendant] presented a compelling explanation for his perjury.").

In addition, during the December 4, 2017 change of plea hearing, Defendant told the Court that he had had sufficient time to work with his attorneys and that he was satisfied with them. The following exchange took place:

> THE COURT: Have you had enough time to talk to your attorneys about your plea?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: And are you satisfied with the advice and efforts of your attorneys on your behalf in this case?
>
> DEFENDANT: I am.

(R. 181 at 16-17.)

These admissions belie Defendant's attempt to claim his counsel did not adequately represent him up to and at the change of plea proceeding. *See Peterson*, 414 F.3d at 826-27 (affirming denial to withdraw guilty plea where district court found that plea was voluntary because, despite defendant's claim that his counsel had made previous promises regarding sentencing, defendant made contradictory statements during plea colloquy); *see also Stewart*, 198 F.3d at 987 ("A defendant has no legal entitlement to benefit by contradicting himself under oath. Thus when the judge credits the defendant's statements in open court, the game is over. There will be no further evidentiary hearing, and an appeal is pointless (indeed, frivolous).") (citations omitted). His own admissions in court flatly contradict his new attempt to blame his guilty plea on his counsel. As such, he has failed to meet his heavy burden. *Peterson*, 414 F.3d at 827. The Court also notes that Defendant had two court-appointed attorneys preparing for trial and advising him regarding his guilty plea. It is simply not believable that both of these

experienced, skilled attorneys attempted to force Defendant, a highly educated man, into pleading guilty.

## III. Defendant Was Not Suffering from Any Mental Impairment that Impacted His Voluntary Plea

Defendant's argument that he was suffering from a panic attack and thus not voluntarily pleading guilty also fails. This argument is contradicted by Defendant's guilty plea, his behavior, an independent expert's opinion, and Defendant's attempts to manipulate the record.

### A. The Plea Colloquy

During the plea colloquy on December 4, 2017, the Court carefully reviewed Defendant's mental and physical health issues with him. (R. 181 at 12-16.) Defendant explained that he first received mental health treatment in 2013 when he was incarcerated at LaSalle County Jail in connection with these criminal charges. Defendant had taken his medication that morning. When the Court asked Defendant if he had "any difficult understanding me this morning," Defendant responded "None." (*Id.* at 16.) Defendant's conduct and answers at the plea hearing when he was under oath confirmed that he was proceeding with the capacity to understand and did not demonstrate any impairment of his ability to think or voluntarily make decisions. During the plea, Defendant calmly stated his mental health issues and never showed any signs of distress:

> THE COURT: Are you in good physical health?
>
> DEFENDANT: No, your Honor.
>
> THE COURT: What physical health issues do you have?
>
> DEFENDANT: Well, some are a little embarrassing, but I've had some bleeding ulcers. I have hypertension, diabetes, glaucoma, and I have some – I'm being treated by a psychiatrist at the present time for post-traumatic stress disorder, anxiety disorder and panic attacks.

THE COURT: Okay. We will get to the mental health issues in just a moment. But in terms of physical health, other than the issues you have identified, are you in good physical health?

After Defendant identified the medications he had taken in the past twenty-four hours to address his physical health issues, the Court turned to his mental health issues:

THE COURT: Have you ever been under the care of a doctor or in a hospital for a mental health condition or drug addiction?

DEFENDANT: No.

THE COURT: But you are seeing a doctor for a mental health condition, correct?

DEFENDANT: That's correct, yes.

THE COURT: So, when did you first start seeing a psychiatrist for PTSD and anxiety disorder?

DEFENDANT: In LaSalle County Jail.

THE COURT: How long ago was that?

DEFENDANT: That was up until November 8th of 2013.

THE COURT: When did you start seeing him?

DEFENDANT: August 28th, I believe –

THE COURT: Of 2013?

DEFENDANT: -- of 2013. And now with Dr. Weiss through the Pillars Program.

THE COURT: So, you are seeing a separate psychiatrist now?

DEFENDANT: Yes.

THE COURT: Before you were in jail in August of 2013, had you seen anyone for mental health issues?

DEFENDANT: Never, no.

Defendant then explained that he had taken citalopram and diazepam that morning for his mental health issues. Before determining his competency, the Court asked:

15

> THE COURT: Have you had any difficult understanding me this morning?
>
> DEFENDANT: None.

(*Id.* at 16.) Defendant's later assertions that he was then suffering from a panic attack at the time he pled guilty conflict with his admissions under oath in court and do not satisfy his heavy burden.

During his plea, Defendant also told the Court that he understood the nature of the charges in the indictment and understood each of the terms in his plea agreement. When the Court asked him if he had any questions about these issues, he said "no, your honor."

Furthermore, Defendant never told the Court that he was suffering from any panic disorder or health symptoms that might impact his ability to plead guilty. As discussed below, Defendant often spoke up in court and did not hesitate to express his views to the Court, even when his lawyers advised against it and even when he criticized his lawyers. Yet, he never mentioned or even suggested that he was having a panic attack or any other mental health issue that might impact his ability to plead guilty.[4]

Moreover, Defendant's subsequent assertions that he did not engage in the conduct to which he already pled guilty do not provide a basis to withdraw his guilty plea. While actual or legal innocence are "fair and just reason[s] to withdraw a guilty plea," "a defendant's bare protestations of innocence—especially after a knowing and voluntary guilty plea in a thorough Rule 11 colloquy—will not suffice, regardless of how swiftly they are made." *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001); *see also, e.g.*, *United States v. Hoke*, 569 F.3d 718,

---

[4] During the government's description of the stipulated conduct evidence, Defendant's counsel asked if Defendant could "have a seat. He's having problems standing." (R. 181 at 38.) Defendant added, "I forgot to mention rheumatoid arthritis." (*Id.*) Indeed, Defendant's own statement demonstrated that his reason for wanting to sit had nothing to do with any mental health issue. Instead, it was his rheumatoid arthritis.

720 (7th Cir. 2009) ("claims of innocence alone do not mandate permission to withdraw a plea, but, rather, must be substantiated by evidence") (quotations and citations omitted).

### B. Defendant's Conduct in Court

Defendant's conduct in the courtroom throughout the pre-trial proceedings also refutes his assertion that he was having a panic attack and did not voluntarily plead guilty as a result. The Executive Committee reassigned this case to the Court on December 14, 2016. The Court held twelve status or motion hearings between December 14, 2016 and December 4, 2017. In addition, the Court held two status hearings for Judge Zagel before the reassignment. The Court also conducted a final pretrial conference and jury instruction conference. Defendant attended these status hearings and conferences. Accordingly, the Court had the opportunity to observe Defendant on numerous separate occasions before he entered his guilty plea.

During many of these hearings, Defendant elected to directly address the Court. Indeed, Defendant frequently raised issues directly with the Court despite being represented by counsel and despite the Court's warnings that he should first consult with counsel. On November 30, 2017—just four days before Defendant pled guilty—the Court held a status in the case and Defendant directly addressed the Court. The Court thus had the opportunity to observe him and his demeanor shortly before his guilty plea. Defendant's conduct, appearance, and reactions were the same on December 4, 2017, when he pled guilty, as they had been throughout the court proceedings leading up to the guilty plea. Defendant responded to questions coherently, listened intently to the proceedings, adding his thoughts, and remained articulate and alert. Nothing was different in his demeanor on December 4, 2017.

### C. Mr. Meagher's Letter

As discussed above, Defendant relied on a letter from Mr. Meagher in support of his motion. At his lawyer's request (a different lawyer than the two lawyers representing him at the time of his guilty plea) and in light of his professional obligations, counsel asks the Court to strike Mr. Meagher's statements, a request which the Court grants.

Even if the Court did not strike these statements, however, the Court is not persuaded by Mr. Meagher's letter. First, he wrote the letter over three months after Defendant entered his plea of guilty. Indeed, Mr. Meagher was not in the courtroom to observe Defendant's behavior, he did not evaluate Defendant at the time of his change of plea, and he had Defendant complete the questionnaire upon which he relied over three months after his guilty plea. Second, there is no suggestion that Mr. Meagher had any pre-existing counseling relationship with Defendant upon which to compare Defendant's conduct or base his evaluation. Based on his letter, Defendant contacted Mr. Meagher on March 5, 2018, to ask Mr. Meagher if Defendant might have a Dissociative Disorder. Third, there is no suggestion that Mr. Meagher ever conducted any evaluation or counseling of Defendant other than having Defendant complete a questionnaire. Mr. Meagher does not appear to have done anything other than review Defendant's answers on the questionnaire. He does not suggest that he evaluated Defendant or his symptoms, if any. Mr. Meagher did not review the change of plea transcript or speak with anyone in the courtroom at the time. Mr. Meagher also did not review any other court documents. Finally, Mr. Meagher does not unequivocally opine that Defendant's supposed "dissociate reaction" impacted his knowing and voluntary guilty plea on December 4, 2017. Instead, Mr. Meagher notes that Defendant was "likely still in a panic state" when he left the courtroom which "likely had an effect on his judgment and decision making." (R. 190-1.)

In addition, any suggestion that Defendant's decision making was impaired at the time of his guilty plea is refuted by the Court's observations at the time of the plea, as discussed above, as well as Defendant's plea in the courtroom. A vague, eight sentence letter sent months later from someone who has not treated Defendant does not impeach the voluntariness of Defendant's plea. *See United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008).

### D. An Independent Forensic Psychiatrist Found Defendant's Plea Knowing and Voluntary

Following Defendant's guilty plea, the Court granted his motion and approved funds for an independent forensic psychiatrist to examine him. That examiner, Dr. Steven Gaskell, reviewed the court documents, including the transcript of Defendant's guilty plea, conducted an independent examination of Defendant, and administered psychological tests to Defendant. After completing his work, Dr. Gaskell opined:

> Upon reviewing relevant discovery and completing a comprehensive interview and psychological testing, it is this examiner's opinion that Mr. Perales knowingly, intelligently, and voluntarily entered his plea of guilty on December 4, 2017.

(R. 217-1 at 18.) Dr. Gaskell's independent opinion is consistent with the Defendant's plea colloquy, the Court's observations, and the other evidence in the case as discussed above.

## CONCLUSION

Because Defendant knowingly and voluntarily entered his plea of guilty on December 4, 2017, the Court denies his motion to withdraw his plea. Defendant's sustained efforts to further delay the proceedings after over five years will not succeed. The case will proceed to sentencing.[5]

Dated: August 7, 2018

ENTERED

_____
**AMY J. ST. EVE**
**United States Circuit Court Judge**
**Sitting by Designation**

---

[5] The Court will address Defendant's request for the appointment of another lawyer – his sixth -- at the next status hearing in this case.